UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

JEREMY HIMAN, et al.,

     Plaintiffs,

     v.                              Case No. 3:21-CV-239 JD

THOR INDUSTRIES, INC., et al.,

     Defendants.

## OPINION AND ORDER

The five named plaintiffs in this lawsuit each bought an RV between 2015 and 2017, a choice they now wish they hadn't made. Over the course of their ownership, they each discovered that their RVs were plagued by an axle defect that created dangerous driving conditions and forced them to rack up costly repairs. The Plaintiffs decided to file this putative class action against the manufacturers of their RVs because they allege that the manufacturers knew about the defect but intentionally failed to tell consumers about it. The defendant manufacturers have responded to the Plaintiffs' claims by simultaneously moving to compel arbitration on some of the claims and moving to dismiss all of the claims if arbitration is not ordered. The Plaintiffs have filed a motion for leave to file a surreply to the Defendants' motion to compel arbitration. For the following reasons, the Court denies the Plaintiffs' motion to file a surreply, denies the Defendants' motion to compel arbitration, and grants the Defendants' motion to dismiss in part.

## I.    Factual Background

Defendant Thor Industries and its co-defendants and subsidiaries DRV LLC, Jayco Corp., and Keystone RV Company (together "Defendants") are all involved in the recreational vehicle

manufacturing industry. The five named plaintiffs all purchased RVs from either DRV, Jayco, or Keystone between 2015 and 2017. They allege that the Defendants knowingly marketed faulty RVs without telling customers that the RVs were defective. (DE 1 ¶¶ 1–9.)

The specific problem at issue stemmed from the Defendants' use of Lippert axles and axle components in some of the RV models that they produced. The axles contained a defect that allowed grease to leak and contaminate each of the RV's brake pads and rotors. The contaminated brake pads and rotors then created unstable driving conditions that made it much harder for the RV or vehicle towing the RV to brake. In addition to degrading the RVs' brake pads and rotors, the defect often led to excessive wear on the vehicles' tires. (*Id.* ¶ 70–83.)

The Plaintiffs alleged that the Defendants had known about the defect since 2015 because of public news accounts, complaints made to the National Highway Traffic Safety Administration, other publicly available comments, and their own pre-sale durability testing. (*Id.* ¶¶ 3, 92–96.) Despite what the Plaintiffs allege was the Defendants' widespread knowledge of the defect, none of the Defendants ever disclosed the defect to prospective customers or worked with customers who had already purchased a vehicle with a defective axle to remedy the problem. (*Id.* ¶ 5.) Instead, the Defendants continued to disperse information to make the public, and potential consumers, believe that the RVs were thoroughly tested and of a high quality. (*Id.* ¶ 143, 174.) One such example the Plaintiffs pointed to is language from Jayco's website stating, "You can count on our RVs to go the distance . . . Quality: Unmatched engineering practices. Superior construction materials and processes." (*Id.* ¶ 131.)

Each of the Plaintiffs alleged that they would not have purchased their RVs or would have paid substantially less for them if they had known about the axle defect and the repair costs they would have to pay after purchase. (*Id.* ¶ 7.) They also alleged that the Defendants refused to

provide warranty coverage for the defect despite the Defendants' knowledge of the problem. (*Id.* ¶¶ 101–107.)

The five named plaintiffs in the lawsuit are each from a different state. Plaintiff Jeremy Himan is an Indiana citizen who purchased a Jayco RV in April 2016. (*Id.* ¶¶ 12–13.) He alleged that he relied on information from Jayco's website, local area RV dealerships, and RV trade shows in deciding to purchase his RV. None of that information informed him that the axle defect existed, and he did not realize that the defect was there until he started noticing braking issues in April 2019. (*Id.* ¶¶ 15–18.) Plaintiff Claudette Beck is a Kansas citizen who purchased her DRV RV in June 2017 after gathering information from DRV at locations including a tour of the DRV production factory, the dealership that sold her the RV, and DRV's website. (*Id.* ¶¶ 20–22.) Ms. Beck noticed problems with her tires throughout her first year of ownership but alleged that she only found out about the axle defect when she took her RV in to be inspected in January 2019 and was told the defect would not be repaired under her warranty. (*Id.* ¶ 24.)

The three other plaintiffs are from New York, Illinois, and Wisconsin. Plaintiff Ian Fawcett, a New York citizen, purchased a Keystone RV in December 2015 after reviewing information he collected from a Massachusetts RV trade show and four RV dealerships located in New York. (*Id.* ¶ 27–29.) Mr. Fawcett was forced to pay for repairs to his RV in December 2016 and September 2020. (*Id.* ¶¶ 30–34.) Plaintiff Mark Prosniewski, an Illinois citizen, purchased a Jayco RV in June 2017 and relied on information he received from Jayco's website and a Chicago RV show before making his purchase. (*Id.* ¶¶ 35–37.) The defect caused his brakes to fail in both September 2018 and September 2019. (*Id.* ¶¶ 38–40.) Finally, Plaintiff Allen Polak, a Wisconsin citizen, purchased a Jayco RV in February 2016 after relying on information he obtained from Wisconsin RV shows and six RV dealerships. (*Id.* ¶¶ 43–45.) Mr.

Polak discovered the defect during the summer of 2020 and had to install new axle components to fix the problem. (*Id.* ¶¶ 46–50.)

Each of the Plaintiffs' RVs came with a limited warranty from the RV's manufacturer. The specifics of what the warranties agreed to cover are not important at this stage as those aspects of the warranties are not being disputed in the pending motions. Two things are important, however.

First, each of the Plaintiffs alleged that the Defendants only provided them a copy of the limited warranty covering their RV after they had already signed the paperwork to complete their purchase of the RV. Because the purchases had already been completed at the time they got the limited warranties, the Plaintiffs allege they had no pre-sale ability to bargain about the terms of the limited warranties. (*Id.* ¶ 105.) There are no allegations at this time that any of the Plaintiffs signed any documents indicating that they were familiar with the contents of the limited warranties or signed anything assenting to the warranties' terms as part of their purchase.

Second, each of the warranties imposed certain provisions and requirements on the purchasers. Jayco's limited warranty, provided to Mr. Himan, Mr. Polak, and Mr. Prosniewski, required that any action to enforce the limited warranty or to claim a breach of implied warranty had to be brought within thirty months of the date of sale of the RV. (DE 19-2; DE 19-3.) DRV's limited warranty, provided to Ms. Beck, and Keystone's limited warranty, provided to Mr. Fawcett, each required that any action to enforce the limited warranty or any claim for breach of implied warranty be brought within fifteen months of the date the RV was purchased. (DE 19-5; DE 19-7.) Additionally, the second to last subsection of Ms. Beck's limited warranty contained language allowing DRV to opt to have any legal claims related to the warranty or her

purchased RV arbitrated. (DE 17-3 at 4.) Ms. Beck's limited warranty was the only one of the named plaintiffs' warranties that contained an arbitration clause.

Because this case is still only a putative class action, the named plaintiffs are the only ones who can properly support the claims they have alleged. The eleven claims they filed include six state consumer protection law claims drawn from each individual plaintiff's state, a breach of warranty claim, a breach of implied warranty claim, a Magnuson-Moss Warranty Act claim, a common law fraud claim, and an unjust enrichment claim.

## II.    Standard of Review

There are two main motions that this order addresses, a motion to compel arbitration and a motion to dismiss. The Court explains the standards for each of those motions in this section. There is also a pending motion for leave to file a surreply, but the Court will address the standard for that motion when the motion is discussed in more depth in the following section.

When considering motions to compel arbitration, courts look to the Federal Arbitration Act, which makes agreements to arbitrate presumptively "valid, irrevocable, and enforceable." 9 U.S.C. § 2. The FAA "embodies both a 'liberal federal policy favoring arbitration and the fundamental principle that arbitration is a matter of contract.'" *Gore v. Alltel Comm'ns, LLC*, 666 F.3d 1027, 1032 (7th Cir. 2012) (quoting *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011)). A party seeking to compel arbitration must show: 1) a written agreement to arbitrate; 2) a dispute within the scope of the arbitration agreement; and 3) a refusal by the opposing party to proceed to arbitration. *Zurich Am. Ins. Co. v. Watts Indus., Inc.*, 466 F.3d 577, 580–81 (7th Cir. 2005). When a court compels arbitration, it must also stay any claims related to the arbitration. 9 U.S.C. § 3. On a motion to compel arbitration, "the evidence of the nonmovant is to be believed

and all justifiable inferences are to be drawn in his favor." *Tinder v. Pinkerton Security*, 305 F.3d 728, 735 (7th Cir. 2002) (internal quotation marks omitted).

In reviewing a motion to dismiss for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6), the Court construes the complaint in the light most favorable to the plaintiff, accepts the factual allegations as true, and draws all reasonable inferences in the plaintiff's favor. *Reynolds v. CB Sports Bar, Inc.*, 623 F.3d 1143, 1146 (7th Cir. 2010). A complaint must contain only a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). That statement must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), and raise a right to relief above the speculative level. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). However, a plaintiff's claim need only be plausible, not probable. *Indep. Trust Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930, 935 (7th Cir. 2012). Evaluating whether a plaintiff's claim is sufficiently plausible to survive a motion to dismiss is "'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 678).

A special rule applies for pleading fraud, however. Under Federal Rule of Civil Procedure 9(b), "a party must state *with particularity* the circumstances constituting fraud . . . ." Fed. R. Civ. P. 9(b) (emphasis added). "This ordinarily requires describing the 'who, what, when, where, and how' of the fraud . . . ." *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 615 (7th Cir. 2011). However, "malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). Rule 9(b) applies to any claim "that is premised upon

a course of fraudulent conduct," including some state consumer protection statutes. *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 737 (7th Cir. 2014).

## III.    Discussion

There are currently three motions pending in this case. Two of the motions, the Defendants' motion to compel arbitration and the Plaintiffs' motion for leave to file a surreply, are intertwined and related to Plaintiff Claudette Beck's claims. The way the Court decides those two motions will impact whether the Court needs to consider the other pending motion, the Defendants' motion to dismiss. Therefore, the Court addresses the motion to compel and motion to file a surreply first. It then proceeds to consider the Defendants' motion to dismiss.

### 1.    *Arbitration*

The Court starts its analysis of the two motions touching on potential arbitration with some background to put the motions, and particularly the motion for leave to file a surreply, in context. The only issue in dispute between the Plaintiffs and Defendants with respect to the Defendants' motion to compel arbitration is whether Ms. Beck validly agreed to be bound by the arbitration clause contained in the limited warranty that she received after she purchased her RV. (DE 24 at 3–6; DE 25 at 2.) The Court and the parties know that now, but the Defendants did not know that when they initially filed their motion to compel arbitration. Thus, the Defendants presented arguments in their initial briefing about why they believed that all three of the main elements required to compel arbitration could be established in this case. (DE 17 at 3–5) (citing *Zurich*, 466 F.3d at 580–81 (listing the three elements: 1) an agreement to arbitrate; 2) a dispute within the scope of the arbitration agreement; and 3) a refusal by the opposing party to arbitrate)). Their argument on the first element asserted that "the Limited Warranty is a valid

7

contract under state law—a fact supported by Ms. Beck's acknowledgement of, and reliance on, the Limited Warranty in the Complaint." (*Id.* at 4.) As additional support for that first element, the Defendants cited to a Seventh Circuit case explaining that consumers generally cannot rely on a contract when it works to their advantage but distance themselves from that contract when it would disadvantage them. (*Id.* at 4) (citing *Mathews v. REV Recreation Grp., Inc.*, 931 F.3d 619, 623 (7th Cir. 2019)).

The Plaintiffs responded to the Defendants' initial brief by disputing only the first element required to compel arbitration. They argued that because Ms. Beck only received the limited warranty containing the arbitration clause after her actual purchase of the RV, she could not be found to have entered into a valid agreement to arbitrate based on state contract law. (DE 24 at 3–6.) The Defendants' reply brief, mirroring the Plaintiffs' response brief, focused only on the first element. The reply brief disagreed with the Plaintiffs' position by once again arguing that Ms. Beck's reliance on the limited warranty as a basis for some of her claims in this lawsuit precluded her from arguing she was not bound by the arbitration clause contained in that same limited warranty. (DE 25.) The Plaintiffs' motion for leave to file a surreply followed.

### a.      *Motion for Leave to File Surreply*

The Plaintiffs, in their motion for leave to file a surreply, argued that they should be allowed a surreply because the Defendants' argument in their reply, that Ms. Beck's decision to bring a limited warranty claim was preclusive no matter when she received the warranty, constituted a new argument. (DE 27 at 1.) The Defendants opposed the Plaintiffs' motion, maintaining that their argument was both not new and only a response to the arguments and caselaw that the Plaintiffs themselves raised in their response. (DE 28 at 1.) Courts generally disfavor surreplies, but they have the discretion to allow them when one is needed to address

new arguments or evidence raised in a reply brief. *See Saunders v. Select Portfolio Servicing, Inc.*, 2019 WL 979609, at *1 (N.D. Ind. Feb. 27, 2019); *Merril Lynch Life Ins. Co. v. Lincoln Nat. Life Ins. Co.*, 2009 WL 3762974, at *1 (N.D. Ind. Nov. 9, 2009). The Court will not exercise that discretion here.

The Court agrees with the Defendants that their argument within their reply brief was not new and does not create a basis for the Plaintiffs to file a surreply. The Defendants' reply brief simply expanded on their initial argument that Ms. Beck should be found to have agreed to the arbitration clause because she decided to pursue claims within this lawsuit based on the limited warranty that contained the arbitration clause. (DE 17 at 4) ("the Limited Warranty is a valid contract under state contract law—a fact supported by Ms. Beck's acknowledgement of, and reliance on, the Limited Warranty in the Complaint"); (DE 25 at 1–5.) While the Defendants cited to additional caselaw in their reply brief in support of that position, that caselaw reflected the same reasoning exemplified by the *Mathews* case that the Defendants cited in their initial brief. (DE 25 at 1–5) (citing cases suggesting consumers cannot rely on a contract when it benefits them and distance themselves when it does not). The Court, in its discretion, thus does not find that the Defendants raised a new argument in their reply brief that would warrant granting the Plaintiffs leave to file a surreply.

### b.     *Motion to Compel Arbitration and Stay Proceedings*

Having found a surreply is not appropriate, the Court moves to consider the Defendants' motion to compel arbitration. As the Court has already explained, the sole dispute between the parties on the motion is whether a valid arbitration agreement was ever formed between Ms. Beck and Defendant DRV given that Ms. Beck only received the limited warranty containing the arbitration clause after she purchased her RV. (DE 24 at 1; DE 25 at 2.)

Before digging into the parties' dispute, however, the Court must first address what appeared to be an argument from the Defendants suggesting that the dispute should go before an arbitrator instead of the Court. *See* (DE 17 at 4 n.3) ("In any event, whether or not the Limited Warranty is a valid contract is a question specifically reserved for the arbitrator.") The Defendants were correct to recognize that a disagreement about compelling arbitration that is based on a dispute about the validity of the contract containing the arbitration clause generally must be decided by an arbitrator, not a court. *See Janiga v. Questar Capital Corp.*, 615 F.3d 735, 741 (7th Cir. 2010) (citing a challenge to a contract based on fraud in the inducement as an example). But Ms. Beck is not challenging the validity of a formed contract to arbitrate. She is instead challenging whether an agreement to arbitrate was ever formed in the first place because she only received the limited warranty containing the arbitration clause after she completed the purchase. (DE 24 at 3–4.) When a party is opposing a motion to compel arbitration by arguing an agreement was never actually formed, the party is presenting a question of contract formation that is left to a court, not an arbitrator, to decide. *See Janiga*, 615 F.3d at 741–42. Therefore, the Court finds that it can appropriately address the parties' dispute. *See id.*; *see also Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403–04; *Granite Rock Co. v. Int'l Bhd. Of Teamsters*, 561 U.S. 287, 296 (2010).

The parties' arbitration dispute, at its core, is a dispute about contract law. And federal courts rely on state law principles of contract formation to resolve such disputes. *See Faulkenberg v. CB Tax Franchise Systems, LP*, 637 F.3d 801, 809 (7th Cir. 2011); *Rosenblum v. Travelbyus.com Ltd.*, 299 F.3d 657, 662 (7th Cir. 2002). Federal courts have recognized that a party cannot be required to arbitrate absent a valid agreement to do so. *See A.D v. Credit One Bank, N.A.*, 885 F.3d 1054, 1060 (7th Cir. 2018); *see also Shockley v. PrimeLending*, 929 F.3d

1012, 1020 (8th Cir. 2019) ("The absence of proof of unequivocal acceptance of an agreement to arbitrate renders the provision unenforceable").

Given the importance of state contract law to resolving the parties' dispute, the Court moves to determine which state's contract law should apply. The Plaintiffs cited to both Kansas law, the state where Ms. Beck is a citizen, as well as Indiana law, the state where the RV was purchased and where this Court sits, in making their arguments. (DE 24 at 4.) The Defendants solely looked to Indiana law. (DE 25 at 2.) Given the lack of clear agreement between the parties, the Court conducts its own choice of law analysis.

The Court has jurisdiction over this case based on the Class Action Fairness Act (DE 1 ¶ 10), which means it must apply the choice of law rules of the forum in which it sits. *See Truitt v. Forest River, Inc.*, 2021 WL 4061591, at *11 (N.D. Ind. Sept. 7, 2021) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487 (1941)) (explaining *Klaxon* rule applies because CAFA is based upon diversity jurisdiction). Indiana follows the most intimate contacts approach for choice of law questions involving contracts. *See Nautilus Ins. Co. v. Reuter*, 537 F.3d 733, 736–37 (7th Cir. 2008) (citing *Employers Ins. of Wausau v. Recticel Foam Corp.*, 716 N.E.2d 1015, 1024 (Ind. Ct. App. 1999)). That approach requires a court to consider: 1) the place of contracting; 2) where the contract was negotiated; 3) where performance occurred; 4) where the subject matter of the contract is located, and 5) the domicile, residence, nationality, place of incorporation and place of business of the parties when deciding which state's law to apply. *Id.*

Using that approach, the Court concludes that Indiana law should apply because the events surrounding Ms. Beck's purchase of her RV are most closely linked with Indiana, not Kansas. Ms. Beck stated in her declaration that her efforts to buy an RV began when she called an RV dealer in New Castle, Indiana to discuss purchasing her RV. (DE 24-1 ¶ 2.) The New

Castle dealer did not have the specific model she wanted in stock, so Ms. Beck asked that the dealer place an order for the RV and have it delivered to the dealer in Indiana. (*Id.*) After the dealer ordered the RV model that Ms. Beck wanted and had it delivered to Indiana, Ms. Beck drove to the Indiana RV dealer "to complete the purchase," "[sign] the sales agreement," and take possession of the RV. (*Id.* ¶ 3.) Ms. Beck also received the warranty booklet that contained the arbitration clause after she had signed the sales agreement in Indiana. (DE 24 at 2; DE 24-1 ¶ 4.) Thus, while Ms. Beck is a Kansas citizen, the evidence shows that Indiana was the state with the closest link to the contracting and facts at issue here. *See Nautilus*, 537 F.3d at 737. The Court will thus apply Indiana law to the parties' dispute.

Indiana imposes the familiar requirements to form a contract, namely offer, acceptance, consideration, and a meeting of the minds between the contracting parties on all essential elements or terms of the transaction. *See Jernas v. Gumz*, 53 N.E.3d 434, 445 (Ind. Ct. App. 2016). In deciding whether there is an agreement to arbitrate, Indiana recognizes that the most important question is whether both parties intended to form an agreement to arbitrate. *See MPACT Const. Grp., LLC v. Superior Concrete Constructors, Inc.*, 802 N.E.2d 901, 906 (Ind. 2004).

The parties do not dispute any material facts at this stage. There is no dispute that Ms. Beck did not receive the limited warranty with its arbitration clause until after she signed the sales agreement. (DE 24 at 2; DE 25 at 2.) There is no dispute that she is now bringing claims that rely to at least some degree on the limited warranty. And there is no dispute that Ms. Beck was provided the limited warranty after she signed the sales agreement. The only issue to decide is whether Ms. Beck's filing of claims based on the limited warranty that contained the

arbitration clause legally requires her to be bound by the terms of the arbitration clause itself. (DE 24; DE 25.)

The Court sides with Ms. Beck given the evidence before it because the Defendants have failed to establish that Ms. Beck ever knew that the arbitration clause existed within the limited warranty much less that she ever agreed or intended to be bound by it.[1] Despite the Defendants' arguments to the contrary, Ms. Beck's situation is very similar to the situation discussed in *DeMidio v. REV Recreation Group*. 2018 WL 1744958 (N.D. Ind. Apr. 10, 2018). In *DeMidio*, two RV purchasers who had sued for breach of warranty and consumer protection law violations successfully avoided application of arbitration clauses within their warranties. The Court reasoned that the plaintiffs were not bound by the arbitration clauses because they did not receive their warranties prior to purchasing their RVs and because there was no evidence to suggest that they ever assented to the terms of the arbitration clauses before bringing suit. *DeMidio*, 2018 WL 1744958 at *1–3, 8.

The similarities to Ms. Beck's situation warrants a similar result here. Ms. Beck purchased her RV in June 2017 by signing a sales agreement with the dealer who had ordered the RV into its inventory. (DE 1 ¶ 21; DE 24-1 ¶ 3.) The parties agree she did not receive a copy of the warranty booklet containing the arbitration clause until after she signed the sales agreement and was given the keys to the RV she had just purchased. (DE 17-2 ¶¶ 3–4; DE 24-1 ¶ 4.) The Defendants have presented no evidence or allegation, other than the fact that Ms. Beck was given a copy of the warranty after sale and has now brought suit, that Ms. Beck was informed about the

---

[1] The Court notes, however, that should Ms. Beck's claims that are premised on the limited warranty survive the Defendants' motion to dismiss, Ms. Beck may have to demonstrate at some future point why it would be appropriate to allow her to proceed on those claims when she argues that she did not receive the limited warranty until after she contracted to purchase the RV.

existence of an arbitration clause within the limited warranty. They have also not provided any evidence or allegation that Ms. Beck ever signed anything indicating that she had read the terms of the warranty or acknowledged that her future claims might be subject to an arbitration clause.

After using the RV for approximately a year and a half, Ms. Beck decided to have her RV inspected in January 2019 because she had consistently noticed excessive wearing on her tires. (DE 1 ¶¶ 23–24.) She was told there were issues related to malfunctioning axle components and was also told that the issue would not be repaired under her warranty. (*Id.* ¶ 24.) There is thus no evidence or allegation that Ms. Beck ever received any repairs under her warranty or was told about the arbitration clause during the inspection. Thus, the only evidence or assertion before the Court is that Ms. Beck received a warranty after signing the sales paperwork and then, several years later, filed legal claims based at least in part on that warranty.

As the court recognized in *DeMidio*, simply providing a warranty containing an arbitration clause to an individual is not enough to establish that the individual has assented to arbitrate disputes arising under the warranty. There must be something to show underlying intent and a meeting of the minds related to arbitrating the claims. *See DeMidio*, 2018 WL 1744958, at *8 (quoting *Rosenblum*, 299 F.3d at 662) (holding that finding the simple provision of a limited warranty is enough "ignores, or leaps over, the fundamental first step—that 'arbitration is a matter of contract between the relevant parties [and] no party can be required to arbitrate absent an agreement to do so.'"); *MPACT*, 802 N.E.2d at 906. A purchaser also cannot be deemed to have agreed to an arbitration clause within a limited warranty simply because that purchaser has brought suit for breach of warranty. *See DeMidio*, 2018 WL 1744958, at *9 (explaining similarity to *Garcia v. Tiffin Motor Homes, Inc.*, No. 3:17-CV-1162, p.10 (N.D. Ala. Feb. 28, 2018) in holding that the argument presumes the existence of a valid arbitration agreement but

14

that consumers "do not necessarily agree to an arbitration provision simply because it was part and parcel of a broader contract"); *see also Mohammed v. Uber*, 237 F. Supp. 3d 719, 728–29 (N.D. Ill. 2017) ("[I[f a party accepts benefits under a contract, this conduct does not constitute acceptance of specific, written terms unless there is evidence that the party took the benefits with knowledge of those terms."); *F.T.C. v. Cleverlink Trading Ltd.*, 519 F. Supp. 2d 784, 796 (N.D. Ill. 2007) (holding that a party's receipt of service under a contract did not indicate acceptance of specific, punitive terms under the contract because there was no evidence that the party knew of or agreed to the terms).

In short, there is no evidence of a signed arbitration agreement, no evidence that the arbitration provision contained in the limited warranty was ever discussed with Ms. Beck, and no evidence that Ms. Beck was even aware of the arbitration clause until the Defendants raised the issue during litigation. That lack of evidence prevents the Court from finding that Ms. Beck agreed to the arbitration clause or that there was ever a meeting of the minds about the arbitration clause's applicability, even though she did file some claims that were tied to the limited warranty as a whole. *See DeMidio*, 2018 WL 1744958, at *9; *Jernas*, 53 N.E.3d at 445 (emphasizing importance of mutual assent or meeting of the minds to contract formation); *see also A.D.*, 885 F.3d at 1060 ("a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit").

The Defendants provided several cases in an attempt to undermine that conclusion, but the cases are each distinguishable in one way or another from Ms. Beck's situation. One case the Defendants cited was *Mengers v. Gulf Stream Coach Inc.*, in which a purchaser argued that she never agreed to an arbitration clause because she, like Ms. Beck, only received the limited warranty containing the arbitration clause after she purchased her RV. 136 F. Supp. 3d 1006,

1008 (N.D. Ind. 2015). While the ultimate holding in *Mengers* adopted the same reasoning that the Defendants raised in their briefing, namely that an individual cannot seek the benefits under a contract while distancing itself from any detriments in that contract, the case is distinguishable. *Id.* The plaintiff in *Mengers*, unlike Ms. Beck, clearly formed a contract to arbitrate because she signed a Service Agreement Declaration Page as part of her purchase. *Id.* at 1008–09. The page the plaintiff signed contained language affirming that she had read the entirety of the service agreement, including the relevant arbitration clause, accepted the terms and provisions of the agreement, and agreed to be bound by those terms. *Id.* at 1009. It thus follows that the court could interpret the situation as the plaintiff trying to take advantage of the good parts of the contract she made while distancing herself from the bad. There is no similar evidence of a contract to arbitrate being formed in Ms. Beck's case though. The Court thus finds *Mengers* and its reasoning distinguishable.

Other cases the Defendants cited contained fact patterns that were also distinguishable from the facts in this case. Several of the cases dealt with a plaintiff who had brought a claim for breach of the terms of a limited warranty while simultaneously arguing in the same case that the terms of the limited warranty were unconscionable. (DE 25 at 1–2); *see, e.g.*, *Mathews*, 931 F.3d at 623. Those cases present a clear contradiction because the plaintiffs were trying to seek benefits for an agreement they agreed had been formed while simultaneously presenting a contractual defense to that same agreement. That is not what Ms. Beck is doing here in opposing application of the arbitration clause. Ms. Beck is disputing that a contractual agreement to arbitrate was ever formed and is trying to keep the Defendants from taking advantage of the terms of the arbitration clause to which she maintains she never assented.

The Defendants also cited to cases where plaintiffs took advantage of a limited warranty to receive covered repairs during the warranty term and then tried to turn around and argue that the limited warranty they had benefitted from was unconscionable or that they did not understand the terms of the warranty. (DE 25 at 4–5); *see Mathews*, 931 F.3d at 623; *Dixon v. Monaco Coach Corp.*, 2009 WL 18737, *3 (N.D. Ind. 2009). The courts in those cases held that the plaintiffs could not receive repairs under the terms of the warranty and then proceed to say they did not understand the warranty or that the warranty should be thrown out. But these cases, once again, are different than Ms. Beck's. The Court has been presented with no evidence suggesting that Ms. Beck ever benefitted from repairs that were covered under her warranty or was told about the existence of the arbitration clause after taking her RV in for repairs. The only evidence before the Court is that Ms. Beck, in January 2019, was explicitly told she would not benefit by having repairs covered under her warranty. (DE 1 ¶ 24.) The Defendants' cited cases are thus factually distinct from Ms. Beck's case.

And finally, the Defendants pointed to cases involving products that were shipped to individuals with warranty terms enclosed as a way to support their argument that simply providing a consumer with a warranty that includes an arbitration clause can be enough to bind the consumer to arbitration. (DE 25 at 5) (citing *Hill v. Gateway 2000, Inc.*, 105 F.3d 1147, 1149 (7th Cir. 1997)). These cases too are factually distinct though because they involved warranty terms that stated that arbitration would be mandated if the individuals receiving the product did not act within a specified period of time. *See Hill*, 105 F.3d at 1149. The limited warranty Ms. Beck received did not have any similar language that suggested that Ms. Beck's silence would be enough to make the clause binding. (DE 17-3.) That distinguishes Ms. Beck's situation and

undermines the Defendants' argument that merely providing her the limited warranty was enough to bind her to the terms of the arbitration clause. (DE 25 at 5.)

The Court thus finds that the Defendants have not satisfied their burden, as the parties seeking to compel arbitration, to show that there is a valid written agreement to arbitrate. *See Zurich*, 466 F.3d at 580–81. Without a finding that Ms. Beck formed a valid agreement to arbitrate, the Court cannot compel Ms. Beck to arbitrate her claims. *See A.D.*, 885 F.3d at 1060.

### 2.      *Motion to Dismiss*

Having found no basis to compel arbitration of Ms. Beck's claims, the Court moves on to consider the Defendants' motion to dismiss all eleven of the Plaintiffs' claims. The Court's analysis proceeds claim by claim.

#### a.      *Claim 1 – Kansas Consumer Protect Act*

The Plaintiffs' first claim alleged a violation of the Kansas Consumer Protection Act ("KCPA"). The KCPA prohibits suppliers from engaging in deceptive acts or practices in connection with a consumer transaction, including misrepresenting the quality of products being sold. *See* Kan. Stat. § 50-627(a). The parties did not dispute that Ms. Beck is the only named plaintiff with standing to bring a claim under the KCPA. (DE 19 at 9–10; DE 23 at 4.) The Defendants argued that Ms. Beck's KCPA claim should be dismissed because she brought the claim outside the relevant statute of limitations period and because she failed to sufficiently plead the claim's required elements. (DE 19 at 10; DE 23 at 4–6.)[2]

---

[2] The Defendants also argued in a footnote that it "cannot be disputed that Ms. Beck's 2018 DRV RESB3 Mobile Suite is not made with a Lippert axle," which places Ms. Beck's RV outside the definition of a "class vehicle." (DE 19 at 10 n.4.) The Plaintiffs do dispute that contention though. (DE 6 n.2.) Given the dispute and likely requirement of facts outside the pleadings to resolve it, the Court cannot decide the potential issue at this dismissal stage.

The Court agrees with the Defendants that Ms. Beck brought her claim outside the relevant statute of limitations period. The statute of limitations for a KCPA claim runs for three years. *See Marksberry v. FCA US LLC*, 481 F. Supp. 3d 1229, 1235 (D. Kan. 2020). The period begins running "when the consumer suffers legal harm or, in the words of the KPCA, is 'aggrieved.'" *Florez v. Ginsberg*, 449 P.3d 770, 777 (Kan. Ct. App. 2019) (internal quotations omitted); *see also Marksberry*, 481 F. Supp. 3d at 1235. The important question is thus when the consumer became "aggrieved," not when the consumer actually discovered the harm. *Florez*, 449 P.3d at 777 (recognizing that the KCPA "does not provide a discovery provision allowing a claim under the KCPA to be tolled"). A consumer becomes "aggrieved" at the time she "suffered a loss" or "when the plaintiff paid for and received the object of the consumer transaction." *Marksberry*, 481 F. Supp. 3d at 1235 (internal quotations omitted); *see also Florez*, 449 P.3d at 777 ("A consumer may be aggrieved under the KCPA without having suffered a direct monetary loss; acting on a statutorily defined deceptive or unconscionable practice to select a provider of covered goods or services may be enough.").

The pleadings demonstrate, and the Plaintiffs' briefing on the motion to dismiss confirms, that Ms. Beck's KCPA claim and damages stem from her allegation that the Defendants' failure to inform her of the axle defect leading up to and "at the time of sale" qualifies as "a fraudulent omission under the KCPA." (DE 23 at 5–6); *see* (DE 1 ¶¶ 120–126.) The Plaintiffs' briefing also confirmed that Ms. Beck is alleging damages that include her need to pay out of pocket for the repairs the axle defect made necessary as well as to remedy the fact that she "overpaid for the vehicle at the time of sale." (DE 23 at 6.)

Given those allegations and arguments, there is no factual dispute to resolve or doubt that Ms. Beck missed the relevant statute of limitations period for a KCPA claim. Ms. Beck alleged

that she suffered legal harm and damages "at the time of sale," in part by initially overpaying for the RV, because the Defendants failed to disclose the axle defect to her. (DE 1 ¶ 25; DE 23 at 5–6.) She has thus, through her pleadings, admitted that she suffered a legal harm and damages at the time she purchased her RV in June 2017, which means she was "aggrieved" at the time of her purchase. *See Marksberry*, 481 F. Supp. 3d at 1235; *Florez*, 449 P.3d at 777 (recognizing student was aggrieved at time he was induced to enroll in program with insufficient curriculum for licensure, not at time he discovered curriculum had been insufficient).  It does not matter that Ms. Beck alleged that she only found out about the axle defect during a January 2019 repair, because she admitted that the fraudulent omissions that formed the basis of her claim caused her to suffer a legal harm at the time of her purchase. (DE 1 ¶ 22, 25, 120, 123–24, 126; DE 23 at 5–6.) Ms. Beck was thus clearly "aggrieved" at the time of her purchase in June 2017, more than three years before she brought her claim.

The Court also notes that Ms. Beck's situation is different than the plaintiff's situation in *Marksberry*, a case the Plaintiffs pointed to as an example of the KCPA limitations period only starting to run when a harm is discovered. In *Marksberry*, the plaintiff only alleged that he was harmed when the warranty he had received along with his vehicle stopped providing coverage. 481 F. Supp. 3d at 1234–35. He did not allege that he had been induced into purchasing the warranty, but instead that the warranty simply should have kept running to cover repairs. *Id.* It was no more than a coincidence that his discovery of the warranty prematurely expiring came at the same time he was harmed by having to pay out of pocket for the repairs he thought would be covered. *See id.* (agreeing that the KCPA statute of limitations begins "running with the occurrence of the alleged conduct constituting the violation, not the discovery of the violations"). Here, Ms. Beck has clearly alleged that she was harmed, and thus "aggrieved," at the time she

purchased her RV. (DE 23 at 5–6.) Because Ms. Beck failed to file her KCPA claim within three years of her purchase, she filed outside the statute of limitations period and her claim must be dismissed.

<blockquote>

b.    *Claim 2 – Illinois Consumer Fraud and Deceptive Business Practices Act*

</blockquote>

The Plaintiffs' next claim alleged a violation of the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"). The parties do not dispute that Mr. Prosniewski is the only named plaintiff with standing to bring an ICFA claim. (DE 19 at 12; DE 23 at 6.) The Defendants raised two challenges to Mr. Prosniewski's ICFA claim. First, they argued that he filed his claim outside the relevant statute of limitations period. And second, they alleged that he failed to plead his claim with sufficient particularity given the heightened pleading standard that applies to an ICFA claim. The Court analyzes each of the Defendants' arguments in turn.

The statute of limitations for an ICFA claim is three years "and begins to run when the cause of action accrues." *Kopely Grp. V., L.P. v. Sheridan Edgewater Properties, Ltd.*, 876 N.E.2d 218, 231 (Ill. Ct. App. 2007). Because Illinois courts recognize that the discovery rule can apply to an ICFA claim, a cause of action under the ICFA only accrues "when a person knows or reasonably should know of his injury and also knows or reasonably should know that it was wrongfully caused." *Kopely*, 876 N.E.2d at 231. Determining when an ICFA limitations period actually begins is thus often a question of fact that cannot be resolved at the dismissal stage. *See, e.g.*, *Rush Univ. Med. Ctr. v. Draeger, Inc.*, 2017 WL 5505021, at *3 (N.D. Ill. Nov. 16, 2017).

The parties dispute when Mr. Prosniewski either knew or should have known about the axle defect, which makes this a case where resolution of the Defendants' statute of limitations argument is not appropriate at the dismissal stage. The Defendants, pointing to the public reports

of Lippert axle defects that the Plaintiffs alleged had been circulating since 2015 (DE 1 ¶ 91–100), argued that the Court should find that the statute of limitations period began when Mr. Prosniewski purchased his RV in June 2017 because Mr. Prosniewski either knew or should have known about the defect at that time. (DE 26 at 4.) The Plaintiffs disagreed, arguing the Court would be wrong to do so because Mr. Prosniewski only learned about the defect when it manifested in his specific RV in September 2018. (DE 1 ¶ 38; DE 23 at 7.) The Court is not in a position to resolve that dispute at this stage of the proceedings and thus cannot find Mr. Prosniewski's claim should be dismissed on statute of limitations grounds. *See Rush*, 2017 WL 5505021 at *3.

The Court thus moves to the Defendants' second argument, that Mr. Prosniewski failed to plead his ICFA claim with the required specificity. To state a claim under the ICFA, a plaintiff must show: (1) a deceptive act or practice by the defendant; (2) the defendant's intent that the plaintiff rely on the deception; (3) that the deception occurred in the course of trade or commerce; and (4) that the consumer fraud proximately caused the plaintiff's injury. *Avon Hardware Co. v. Ace Hardware Corp.*, 998 N.E.2d 1281, 1290 (Ill. Ct. App. 2013). A plaintiff bringing an ICFA claim must satisfy the heightened pleading standard for fraud laid out in Federal Rule of Civil Procedure 9(b). *See Connick v. Suzuki Motor Co.*, 675 N.E.2d 584, 593 (Ill. 1996).[3] A plaintiff must identify the who, what, where, when, and how of the alleged fraud to

---

[3] The Plaintiffs do not dispute that the heightened pleading standard applies to ICFA claims. (DE 23 at 8.) They did, however, note that "the pleading standard is relaxed where relevant facts relating to the fraudulent conduct are solely within the defendants' possession." (*Id.*) While that is an accurate statement of law, the Plaintiffs did not elaborate on that statement at all or present the Court with any reason why the heightened standard should be relaxed in *this* case. The Court thus employs the heightened pleading standard in its analysis. *See Emery v. Am. Gen. Fin., Inc.*, 134 F.3d 1321, 1323 (7th Cir. 1998) (recognizing the pleading standard is only relaxed when plaintiff makes a *showing* that further particulars of the alleged fraud could not have been obtained without discovery) (emphasis added).

satisfy the heightened pleading standard for an ICFA claim. *See Camasta*, 761 F.3d at 738;

*Ciszewski v. Denny's Corp.*, 2010 WL 2220584, at *1 (N.D. Ill. June 2, 2010).

Mr. Prosniewski has alleged that Jayco's failure to disclose the axle defect to him prior to

his RV purchase, despite Jayco knowing the defect existed, constituted a fraudulent omission

that caused him harm by inducing him to purchase the defective RV. (DE 1 ¶ 133–135; DE 23 at

7; DE 26 at 2.) His allegations are based on actual communications he received from Jayco, both

through its website and at an RV show, and thus satisfy the ICFA requirement that omission

allegations be paired with allegations that there were actual communications between the

plaintiff and defendant. (DE 1 ¶ 37); *see De Bouse v. Bayer AG*, 922 N.E.2d 309, 316 (Ill. 2009)

("If there has been no communication with the plaintiff, there have been no statements and no

omissions."). The Defendants still argued that Mr. Prosniewski was not specific enough in his

pleadings to satisfy the heightened Rule 9(b) standard and survive dismissal though. (DE 19 at

11.)

The fact that Mr. Prosniewski is alleging a fraudulent omission and not a fraudulent

misrepresentation changes his burden under Rule 9(b) to some extent. Courts in this circuit "have

recognized that the standard to state a fraudulent omission claim under Rule 9(b) is more relaxed

than the typical fraud claim." *See Fed. Deposit Ins. Corp. v. Patel*, 2020 WL 6681348, at *2, 5

(N.D. Ill. Nov. 12, 2020) (collecting cases); *see also Pirelli Armstrong Tire Corp. Retiree Med.*

*Benefits Tr. v. Walgreen Co.*, 631 F.3d 436, 442 (7th Cir. 2011) (cautioning courts not to take

"an overly rigid view" when applying the Rule 9(b) standard and noting the importance of "the

twin demands of detail and flexibility" in making a determination). A plaintiff must still identify

the who, what, when, where, and how of his claim, but he need not include as much detail given

that the allegation rests on omissions. *See Federal Deposit Insurance Corp.*, 2020 WL 6681348

at *2; *see also Republic Bank & Tr. Co. v. Bear Stearns & Co.*, 683 F.3d 239, 256 (6th Cir. 2012); *McKee v. Gen. Motors LLC*, 376 F. Supp. 3d 751, 761 (E.D. Mich. 2019) ("a complaint may suffice if it alleges that a manufacturer knew of a defect before sale, the various venues the manufacturer used to sell the product failed to disclose the defect, and that the plaintiffs would not have purchased the product or would have paid less for it had they known of the defect.").

The Court finds that Mr. Prosniewski met the heightened, Rule 9(b) standard. Mr. Prosniewski made clear that, prior to purchasing his RV from an RV dealer in DeKalb, Illinois in June 2017, he "reviewed and relied upon information found on Jayco's website and furnished by Jayco at the Chicago RV & Camping Show, which did not disclose or mention the Axle Defect." (DE 1 ¶¶ 36–37.) One such statement specifically mentioned in the complaint is Jayco's language on its website, "You can count on our RVs to go the distance . . . Quality: Unmatched engineering practices. Superior construction materials and processes." (DE 1 ¶ 131.) There is no missing in his pleadings that Jayco's failure to disclose the axle defect to him either online or at the Chicago RV show led him to bring his omission-based ICFA claim because "[n]either [Jayco], nor any of its agents, dealers or other representatives, informed [him] of the existence of the Axle Defect prior to purchase." (DE 1 ¶ 41.) His pleadings thus clearly put the Defendants on notice as to why he thought he could sustain a claim under the ICFA. *See Vicom, Inc. v. Harbridge Merch. Servs., Inc.*, 20 F.3d 771, 777 (7th Cir. 1994) (recognizing one primary reason for heightened pleading is providing notice of the plaintiffs' claim). Further, Mr. Prosniewski clearly explained how he believed he was harmed by the allegedly fraudulent omissions, pleading that he would not have purchased the RV and would have avoided the extensive repair costs associated with the RV, or would have paid less for the RV, if Jayco had disclosed its alleged knowledge of the axle defect. (DE 1 ¶ 41.)

In that way, Mr. Prosniewski has properly alleged the who, what, when, where, and how of his claim to satisfy the Rule 9(b) standard. The "who" is Jayco and its representatives. The "what" is Jayco's knowledge of the axle defect and intentional omission of that information from any communications with him. The "when" is leading up to his purchase of his RV in June 2017. The "where" is on Jayco's website and at the Chicago RV & Camping Show. And the "how" is that the omissions led him to purchase a defective RV that he would not have otherwise purchased if he had been fully informed. (DE 1 ¶¶ 35–42); *see Beck v. FCA US LLC*, 273 F. Supp. 3d 735, 751 (E.D. Mich. 2017) (citing *MacDonald v. Ford Motor Company*, 37 F. Supp. 3d 1087, 1096 (N.D. Cal. 2014)) (detailing how other courts have found similar showings sufficient for claims based on alleged vehicle defects involving a manufacturer's failure to disclose). The Court thus finds that Mr. Prosniewski's omission allegations satisfy the heightened pleading standard and that Mr. Prosniewski's ICFA claim should therefore not be dismissed.

### c.   Claim 3 – Indiana Deceptive Consumer Sales Act

The Plaintiffs' third claim alleged that the Defendants violated the Indiana Deceptive Consumer Sales Act ("IDCSA"), which prohibits deceptive acts, omissions, and practices in connection with consumer transactions. *See* Ind. Code § 24-5-0.5-3. The parties do not dispute that Mr. Himan is the only named plaintiff who could bring an IDCSA claim. (DE 19 at 12; DE 23 at 8.) The Defendants raised the same statute of limitations and insufficient pleading arguments in relation to Mr. Himan's IDCSA claim that they did with Mr. Prosniewski's ICFA claim. (DE 19 at 12–13.) The Court takes each argument in turn.

The IDCSA requires that an individual bring an action for a deceptive act or practice within two years of the time that deceptive act or practice occurred. *See* Ind. Code § 24-5-0.5-

5(b). While that does not leave room for application of the discovery rule, Indiana recognizes

that the IDCSA's two-year limitations period can be tolled in instances where a defendant has

engaged in active concealment, which the Plaintiffs argue occurred here but the Defendants

dispute. (DE 23 at 8–9); *see Elward v. Electrolux Home Prod., Inc.*, 264 F. Supp. 3d 877, 890

(N.D. Ill. 2017) (citing *Logan v. Wilkins*, 644 F.3d 577, 582 (7th Cir. 2011)).

      Because the parties once again dispute the time at which the statute of limitations should

be found to have started to run, dismissal based on a statute of limitations violation is not proper

at this stage. The Defendants argued that, concealment or not, Mr. Himan either knew or should

have known about the axle defect at the time he purchased his RV in April 2016 given the public

reports of the defect the Plaintiffs alleged had been circulating since 2015. (DE 26 at 5.) The

Plaintiffs countered that Mr. Himan did not know about the defect until April 2019 because the

Defendants actively concealed the defect and any information about it from him. (DE 1 ¶¶ 15,

66–67; DE 23 at 8.) As was true for the ICFA claim, any resolution of this dispute is

inappropriate at the dismissal stage as it would at a minimum require the Court to view facts

outside the pleadings. *See Lyons v. Richmond Cmty. Sch. Corp.*, 19 N.E.3d 254, 262 (Ind. 2014).

      The Court thus moves to the Defendants' second argument, that Mr. Himan failed to

plead his IDCSA claim with the required specificity under the heightened, Rule 9(b) pleading

standard. Mr. Himan's IDCSA claim, like Mr. Prosniewski's ICFA claim, is based on omission

and relies on allegations that Jayco knew about the axle defect but failed to mention that defect

in any of its communications with him prior to his purchase of the RV. (DE 1 ¶¶ 13–19; DE 23 at

9.) The Plaintiffs did not dispute, and the Court independently finds, that the heightened Rule

9(b) pleading standard applied to Mr. Himan's IDCSA claim based on his allegations. (DE 23 at

9); *see McKinney v. State*, 693 N.E.2d 65, 68 (1998). [4] And because Mr. Himan's IDCSA claim, like Mr. Prosniewski's ICFA claim, is omission-based, the Rule 9(b) standard is somewhat relaxed. *See Federal Deposit Insurance Corporation*, 2020 WL 6681348 at *2, 5.

The Court finds that Mr. Himan met the heightened standard. He made clear that, prior to purchasing his Jayco RV from an RV dealer in Coldwater, Michigan in April 2016, he "reviewed and relied upon information furnished by Jayco and its representatives, which did not disclose or mention the Axle Defect." (DE 1 ¶ 13–14.) He also specified that the information he relied on came from "Jayco's Website," "local area RV dealerships," and "RV trade shows." The IDCSA portion of the complaint highlighted the same statement from Jayco's website that the ICFA portion highlighted, namely that Jayco had indicated "You can count on our RVs to go the distance" and that the "quality" included "unmatched engineering practices" and "superior construction materials and processes." (DE 1 ¶ 143.) There is no missing in Mr. Himan's pleadings that the failure to disclose the axle defect to him either online, at local RV dealerships, or at RV trade shows, despite their knowledge of the defect, led him to bring his omission based IDCSA claim. (DE 1 ¶ 18); Ind. Code § 24-5-0.5-3 (recognizing omissions about product's performance to be actionable under IDCSA). Mr. Himan thus clearly put the Defendants on notice as to why he brought his IDCSA claim and what grounds he believed he had to sustain the claim. *See Vicom*, 20 F.3d at 777. Further, he clearly explained how he believed he was harmed by the allegedly fraudulent omissions, pleading they caused him to purchase an RV he either would not have otherwise purchased or for which he would have paid less. (DE 1 ¶ 18.)

---

[4] The Court once again notes that the Plaintiffs included language stating "the pleading standard for fraud claims is relaxed where relevant facts relating to the fraudulent conduct are solely within the Defendants' control." (DE 23 at 9.) However, as was true before, the Plaintiffs provided no argument or further explanation about why they thought that precedent applied in this case. The Court thus proceeds with its analysis based on the heightened pleading standard. *See Emery*, 134 F.3d at 1323.

In that way, Mr. Himan has alleged the required who, what, when, where, and how of the offense to be able to proceed with his IDCSA claim. *See Young v. Harbor Motor Works, Inc.*, 2009 WL 187793, at *6 (N.D. Ind. Jan. 27, 2009) (analyzing heightened pleading in IDCSA claims). The "who" is Jayco and its representatives. The "what" is Jayco's knowledge of the axle defect and intentional omission of that information from any communications with him. The "when" is prior to his purchase in April 2016. The "where" is on Jayco's website, at local area RV dealerships, and at RV trade shows. And the "how" is that the omissions led him to purchase a defective RV, which he would not have otherwise done if he had been fully informed. (DE 1 ¶¶ 12–19); *see Beck*, 273 F. Supp. 3d at 751. The Court thus finds that Mr. Himan's pleadings related to his omission-based IDCSA claim satisfy the heightened Rule 9(b) standard and that his IDSCA claim should not be dismissed.

### d.    Claim 4 – Wisconsin Deceptive Trade Practices Act

The Plaintiffs' fourth claim alleged that the Defendants violated the Wisconsin Deceptive Trade Practices Act ("WDTPA"). The WDTPA prohibits a "representation or statement of fact which is untrue, deceptive or misleading." Wis. Stat. § 100.18. To prevail on a WDTPA claim, a plaintiff must prove three elements: 1) the defendant made a representation to the public with the intent to induce an obligation; 2) the representation was untrue, deceptive, or misleading; and 3) the representation caused the plaintiff pecuniary loss. *See Northcentral Tech. Coll. v. Doron Precision Sys., Inc.*, 2013 WL 5719459, at *3 (W.D. Wis. Oct. 21, 2013). The parties did not dispute that Mr. Polak is the only named plaintiff who could sustain a claim under the WDTPA. (DE 19 at 13–14; DE 23 at 9.) The Defendants raised the same two issues with Mr. Polak's WDTPA claim as they did with the other plaintiffs' consumer protection statute claims, namely that Mr. Polak filed his claim outside the designated statute of limitations period and additionally

28

failed to sufficiently plead his claim under the heightened pleading standard required for a WDTPA claim. Because the Court finds that Mr. Polak filed outside the relevant statute of limitations period, the Court only considers the parties' statute of limitations arguments.

There is a three-year statute of limitations period imposed for individuals bringing a claim under the WDTPA. *See Leitzke v. Magazine Marketplace, Inc.*, 168 Wis. 2d 668, 672 (1992). The limitations period "begins to run as of the date of the defendant's conduct." The discovery rule is not applied when determining the start of the limitations period because the WDTPA is classified as a statute of repose and the Wisconsin Supreme Court has recognized that "the discovery rule does not apply to statutes of repose." *See Staudt v. Artifex Ltd.*, 16 F. Supp. 2d 1023, 1031 (E.D. Wisc. 1998). The Plaintiffs have not questioned the Defendants' argument that given that standard, the limitations period for Mr. Polak's claim would have started to run when he purchased his RV in February 2016 and would have expired three years later in February 2019, roughly two years before he filed his claim. (DE 1 ¶ 51–52; DE 19 at 14; DE 23 at 10.) Instead, they argued that the Court should find Mr. Polak can avoid losing his claim for statute of limitations reasons by invoking the continuing tort theory to circumvent the limitations period. (DE 23 at 10); *see Werner v. Pittway Corp.*, 90 F. Supp. 2d 1018, 1033 (W.D. Wis. 2000) (recognizing that the continuing tort theory can toll the WDTPA).

The continuing tort theory exception to a statute of limitations violation is meant to allow plaintiffs who have a claim only after a series of wrongful acts by a defendant, such as plaintiffs bringing medical malpractice claims or workplace harassment claims, to avoid being barred from bringing a claim because the wrongful acts were not properly actionable until the last of the acts occurred. *See Limestone Dev. Corp. v. Vill of Lemont, Ill.*, 520 F.3d 797, 801–02 (7th Cir. 2008); *Rodrigue v. Olin Emps. Credit Union*, 406 F.3d 434, 442 (7th Cir. 2005) (describing the theory

29

as applying where "a cause of action arises not from individually identifiable wrongs but rather from a series of acts considered collectively"); *Werner*, 90 F. Supp. 2d at 1033. The Plaintiffs argued that the theory should apply here because the "Defendants have been continually republishing their false and omissive advertisement . . . to affected customers including Plaintiff Polak." (DE 23 at 10.)

The theory does not help Mr. Polak escape the limitations period though. Mr. Polak's claim may be based on multiple failures by Jayco to inform him of the axle defect, but all of those failures underlying his claim happened before he purchased his RV and became actionable when he made the purchase in February 2016. (DE 1 ¶¶ 44, 52.) There is thus nothing *continuing* about the wrongful acts that support his WDTPA claim. *See Rodrigue*, 406 F.3d at 442; *Noonan v. Nw. Mut. Life Ins. Co.*, 276 Wis. 2d 33, 49–50 (2004). Additionally, even if Mr. Polak wanted to argue that his WDTPA claim actually was premised on misrepresentations or omissions to him after his purchase, he could not do so under the statute. The first element necessary to prove a WDTPA claim requires showing that the defendant made a representation to the "public." *See Northcentral*, 2013 WL 5719459 at *3. An individual is no longer considered a member of the "public" for purposes of that first element after he enters into a contract to purchase the offered item he is suing over. *Id.* Therefore, Mr. Polak stopped being a member of the "public" for purposes of his claim when he purchased his RV in February 2016 and any future alleged misrepresentations or omissions could not help to support his claim. *See id.* (rejecting application of continuing tort theory to WDTPA claim in similar circumstance). The Court thus finds that the continuing tort theory does not apply to circumvent the statute of limitations period on Mr. Polak's claim and that the claim must thus be dismissed.

       e.     *Claims 5 and 6 – New York General Business Law*

The Plaintiffs' fifth and sixth claims alleged that the Defendants violated two New York consumer protection laws. The first of the two claims alleged a violation of a New York law that makes unlawful "deceptive acts or practices in the conduct of any business, trade or commerce." N.Y. Gen. Bus. Law § 349. The second of the two claims alleged a violation of a New York law that makes unlawful "[f]alse advertising in the conduct of any business, trade or commerce." N.Y. Gen. Bus. Law § 350-a. The parties did not dispute that Mr. Fawcett is the only named plaintiff who could bring a claim under either statute. (DE 19 at 14–15; DE 23 at 11.) The Defendants raised the same two statute of limitations and insufficient pleading arguments in response to these claims from Mr. Fawcett.[5] The Court only discusses the statute of limitations arguments because application of the statute of limitations is dispositive for both claims.

There is a three-year statute of limitations imposed for both New York claims alleged in this lawsuit. *See People ex rel. Spitzer v. Cty. Bank of Rehoboth Beach, Del.*, 846 N.Y.S.2d 436, 439 (2007). The claims are held to accrue when a plaintiff is injured by the actions alleged to have violated the statutes. *See Marshall v. Hyundai Motor Am.*, 51 F. Supp. 3d 451, 461 (S.D.N.Y. 2014); *see also Enzinna v. D'Youville Coll.*, 922 N.Y.S.2d 729, 730 (2011). When the claims are based on misrepresentations or omissions about a defect in place at the time a vehicle is purchased and not about a benefit the consumer expects to have after purchasing the vehicle, the "injury" is held to have occurred at the time of purchase. *See Marshall*, 51 F. Supp. 3d at 461 (collecting cases). Mr. Fawcett purchased his RV in December 2015 and did not bring his claims, which were based on misrepresentations or omissions about defects in the vehicle at the time of

---

[5] The Defendants raised the same issue for Mr. Fawcett that they did with Ms. Beck, namely that Mr. Fawcett did not purchase an RV with a Lippert axle and thus had an RV that is not a "class vehicle." (DE 19 at 15 n.5.) As it did with Ms. Beck, the Court passes over that contention as improperly considered at this stage given the lack of evidence presented and the Plaintiffs' apparent dispute of that fact.

his purchase, until January 2021. (DE 1 ¶¶ 28–34.) Thus, absent some reason why the limitations period should be tolled, Mr. Fawcett filed both claims after the limitation periods expired.

The Plaintiffs argued that the Court should recognize that equitable tolling may apply to Mr. Fawcett's claims and allow the claims to survive despite Mr. Fawcett's late filing. (DE 23 at 11–12.) The Plaintiffs' argument in their brief appears to contend that the Defendants have wrongfully caused Mr. Fawcett to refrain from filing a timely action. (*Id.* at 11) (citing *Stuart v. Stuart*, 2013 WL 6477492, at *4 (S.D.N.Y. Dec. 10, 2013)) (explaining equitable tolling is proper when "plaintiff was induced by fraud, misrepresentations or deception to refrain from filing a timely action")). But aside from recounting that equitable tolling exists in New York, the Plaintiffs provided no allegations or argument in their response brief to explain how Keystone or any of the other defendants kept Mr. Fawcett from filing his claims in a way that would allow equitable tolling to apply. (*Id.* at 11–12.)

And the Court cannot find any reason why equitable tolling should apply to Mr. Fawcett's claims. New York only applies equitable tolling when the defendant takes some action subsequent to the actions that form the basis of the claim itself that prevent a plaintiff from recognizing he has a claim or from bringing that claim. *See Orange Transportation Servs., Inc. v. Volvo Grp. N. Am., LLC*, 450 F. Supp. 3d 311, 321–22 (W.D.N.Y. 2020) ("For equitable tolling to apply, a plaintiff may not rely on the same act that forms the basis for the claim . . . [it] is triggered by some conduct on the part of the defendant after the initial wrongdoing; mere silence or failure to disclose the wrongdoing is insufficient.") (quoting *Ross v. Louise Wise Servs., Inc.*, 868 N.E.2d 189, 198 (N.Y. 2007); *Marshall*, 51 F. Supp. 3d at 465 (collecting cases).

The only fraud, misrepresentation, or deception that the Plaintiffs alleged with respect to Mr. Fawcett is Mr. Fawcett's being misled by Defendant Keystone's marketing materials,

authorized dealers, and representatives prior to purchasing the RV. (DE 1 ¶ 28–34.) The Court takes those allegations as true at this stage, but it notes that those allegations all form the basis of Mr. Fawcett's consumer protection claims. (*Id.*) Therefore, they cannot also form the basis for equitable tolling of the statute of limitations on those claims. *See Orange*, 450 F. Supp. 3d at 321–22. Further, the only other allegation of concealment in support of tolling that the Plaintiffs made was that "[a]ny applicable statute(s) of limitations has been tolled by Defendants' knowing and active concealment and denial of the facts alleged herein." (DE 1 ¶ 66.) That generalized allegation of fraudulent concealment related to every claim in the complaint is not enough to support equitable tolling of the specific New York claims. *See Orange*, 450 F. Supp. 3d at 321 ("Generalized or conclusory allegations of fraudulent concealment are not sufficient to toll a statute of limitations."). The Court thus finds equitable tolling does not apply to Mr. Fawcett's claims and that the claims must be dismissed because they were filed outside the relevant statute of limitations periods.

### f.  *Claims 7 and 8 – Magnuson-Moss and Breach of Express Warranty*

The Plaintiffs' next two claims alleged violations of the Magnuson-Moss Warranty Act ("MMWA") and breaches of the express warranties the Defendants provided to the named plaintiffs along with the Plaintiffs' RVs. The Defendants' motion to dismiss did not address the substance of the claims but instead argued that the claims should be dismissed because the Plaintiffs each waited too long to bring them based on statute of limitations language contained in the warranties.[6]

---

[6] As the Defendants correctly noted, a breach of warranty is a prerequisite to a violation under the MMWA. *See Hoopes v. Gulf Stream Coach Inc.*, 2017 WL 6884317, at *1 (N.D. Ind. Apr. 13, 2017). Therefore, if the Plaintiffs' breach of warranty claims are time barred, their claims under the MMWA also fail. *Id.*

The parties did not dispute that each of the warranties at issue, through their language, reduced the statute of limitations period in which each of the plaintiffs could bring a claim for breach of warranty to either fifteen months or thirty months from the date of purchase. (DE 19-2; DE 19-3; DE 19-5; DE 19-7.) They also do not dispute that each of the claims were filed after the requisite period specified in each of their warranties or that Indiana law applies to the breach claims. (DE 19 at 17–18; DE 23 at 13–15); *see Snow v. Forest River, Inc.*, 2018 WL 6435649, at *4 (N.D. Ind. Dec. 7, 2018) (explaining Indiana choice of law with respect to statute of limitations disputes). What they did dispute, however, was the Plaintiffs' assertion that the warranties' reductions in the statute of limitations periods were substantively and procedurally unconscionable. (DE 23 at 13–15.)

The Plaintiffs' argument that the shortened time limits were substantively unconscionable fails based on Indiana statute and relevant precedent. Substantive unconscionability relates to "oppressively one-sided and harsh terms of contract." *Castagna v. Newmar Corp.*, 340 F. Supp. 3d 728, 743 (N.D. Ind. 2018). While the Plaintiffs may not be happy with the fact that the warranties reduced the limitations period for their breach claims, Indiana law and relevant precedent confirms that such a reduction is not substantively unconscionable. *See* Ind. Code § 26-1-2-725 ("An action for breach of contract for sale must be commenced within four (4) years after the cause of action has accrued. By the original agreement, the parties may reduce the period of limitations to one (1) year but may not extend it."); *Dixon*, 2009 WL 187837 at *3 (holding that "the Indiana legislature has expressly provided that a manufacturer can limit the applicable warranty period without creating a *per se* lopsided-bargain"). The Court thus cannot find that the reductions to the relevant limitation periods in each of the Plaintiffs' warranties were substantively unconscionable.

The Plaintiffs fare better with their procedural unconscionability argument at this stage though. Procedural unconscionability "arises from irregularities in the bargaining process or from characteristics peculiar to one of the parties." *Castagna*, 340 F. Supp. 3d at 744 (quoting *DiMizio v. Romo*, 756 N.E.2d 1018, 1024 (Ind. Ct. App. 2001). According to the Plaintiffs, none of them received their limited warranties until after their purchases of the RVs were complete, which, they argued, made the shortened time periods within the warranties procedurally unconscionable. (DE 1 ¶ 105.) The Plaintiffs are correct that to be enforceable, a limitation within a warranty "must have actually been part of the agreement" that the parties entered. *Castagna*, 340 F. Supp. 3d at 744. And because the Plaintiffs all claim that they did not receive their warranties until after they purchased their RVs, and the Court must accept the Plaintiffs' allegations as true at this stage, the Court finds there is a factual issue as to whether the warranties' shortening of the statute of limitations under the circumstances specific to each Plaintiff could justify a finding of procedural unconscionability.

The Court, like the court in *Dixon*, would have to rely on information outside of the pleadings, including facts specific to each plaintiff's contracting, to resolve the issue of whether the terms of the warranties were procedurally unconscionable. 2009 WL 187837, at *2–4; *In the Matter of the Complaint of Kindra Lake Towing, L.P.*, 2016 WL 3227303, at *3 (N.D. Ill. June 13, 2016) ("although whether a contract is unconscionable is a question of law, the circumstances surrounding the formation of the contract, which are relevant to an unconscionability analysis, are often fact dependent") (internal quotations omitted). Those factual issues are not appropriate for the Court to resolve at this dismissal stage, so the Court cannot find dismissal proper on statute of limitations grounds at this time.

Before concluding, the Court notes that the Defendants cited to past cases that found plaintiffs' unconscionability arguments lacking under similar circumstances. The Court does not find those cases dispositive on procedurally unconscionability at this juncture though. Each of the cases either did not address procedural unconscionability specifically or were decided at the summary judgment stage and thus had more facts on which to rely. (DE 19 at 18; DE 26 at 8–9.) They thus may be more persuasive during subsequent stages of this lawsuit but are not enough at this time to convince the Court that dismissal of the Plaintiffs' MMWA and breach of warranty claims is appropriate.[7]

> g.    *Claim 9 – Breach of Implied Warranty*

The next claim the Plaintiffs brought was a claim for breach of implied warranty. The Defendants raised the same statute of limitations argument in support of dismissing this claim that they did in response to the breach of limited warranty and MMWA claims. (DE 19 at 19.) Specifically, they argued that because the warranties that the Plaintiffs received all shortened the time periods in which a claim for breach of implied warranty could be brought, and because none of the Plaintiffs filed within those time periods, none of the Plaintiffs could obtain relief on a breach of implied warranty claim. The Plaintiffs' countered with the same response that the warranties were substantively and procedurally unconscionable. (DE 23 at 16.) The Court's decision on this claim mirrors its decision on the prior warranty-based claims. The Court finds that dismissal is inappropriate at this time only because of the Plaintiffs' continued allegations

---

[7] While the Plaintiffs' arguments tied to procedural unconscionability are enough to allow them to avoid dismissal, the Court notes that the Plaintiffs may be faced with showing how they can proceed on breach of warranty claims while simultaneously asserting that some of the terms of those warranties are procedurally unconscionable. *See Mathews*, 931 F.3d at 623 ("[Plaintiffs] cannot have it both ways: relying on the contract when it works to their advantage to get repairs and then alleging that it is unconscionable when it doesn't.")

that the terms of the warranties shortening the statute of limitations periods were procedurally unconscionable.

> h.      *Claim 10 and 11 – Common Law Fraud and Unjust Enrichment*

The final two claims the Plaintiffs brought were for common law fraud and unjust enrichment. [8] The Defendants' only argument against these claims was that the claims "are little more than thinly veiled attempts to circumvent the terms" of the limited warranties, including their limitations periods, and thus should be dismissed for the same reasons as the warranty claims. (DE 19 at 19–20.) As an initial matter, the Court has not found that the warranty claims should be dismissed, which on its own defeats the Defendants' argument. But even if the Court had dismissed the warranty claims, the Defendants' argument would still fail.

First, the Defendants failed to provide any support for their argument that the Plaintiffs' unjust enrichment claim should be treated as a veiled breach of contract claim. The only cases the Defendants cited recounted the rule in Indiana that a breach of contract claim remains a breach of contract claim regardless of a plaintiff's attempt to repackage that claim as either fraud, constructive fraud, conversion, or negligence. (DE 19 at 19–20); *see Sheaff Brock Investment Advisors, LLC v. Morton*, 7 N.E.3d 278, 288 (Ind. Ct. App. 2014); *JPMCC 2006-CIBC14 Eads Parkway, LLC v. DBL Axel, LLC*, 977 N.E.2d 354, 364 (Ind. Ct. App. 2012). The Plaintiffs were right to point out in their response that the cited cases said nothing about unjust enrichment claims. (DE 23 at 16.) And the Defendants gave no indication about why they believed unjust

---

[8] The Plaintiffs appeared to mislabel their common law fraud claim as "Count VIII" even though they had already listed their prior breach of express warranty claim as "Count VIII." (DE 1 at 44, 47.) The Court, for purposes of this order, refers to the Plaintiffs' breach of express warranty claim as "Claim 8" and the Plaintiffs' common law fraud claim as "Claim 10."

enrichment claims should be included in that list. The Court thus finds no basis to dismiss the Plaintiffs' unjust enrichment claim.

Second, while the cited cases did address common law fraud claims, the Defendants' argument is based on what appears to be a flawed reading of the pleadings. "The rule of law is that a party to a contract or its agent may be liable in tort to the other party for damages from negligence that would be actionable if there were no contract, but not otherwise." *Koehlinger v. State Lottery Comm'n of Indiana*, 933 N.E.2d 534, 542 (Ind. Ct. App. 2010). The Defendants argued that the Plaintiffs' fraud claim should be subsumed into their breach of warranty claims under that standard because "[e]ach and every one of Plaintiffs' claims under Indiana law is premised on an alleged breach of the Limited Warranties." (DE 19 at 20.) However, the pleadings suggest that the Plaintiffs' fraud claim is not based on the limited warranties but instead on the actual act of inducing the Plaintiffs to purchase an RV with a defective axle. (DE 1 ¶ 213) ("Defendants made material omissions concerning a presently existing or past fact," namely the axle defect, that fraudulently induced the Plaintiffs to purchase the vehicles with the axle defect); (DE 23 at 17) (arguing the claim "is based on Defendants' decision to sell the Class Vehicles with a known safety-related Defect and conceal that fact from purchasers to induce sales." (*Id.*) The Court thus fails to see the same connection to the limited warranties that the Defendants alleged. *See Truitt v. Forest River, Inc.*, 2021 WL 4061591, at *11–12 (N.D. Ind. Sept. 7, 2021) (finding fraud claim separate from contract claim under similar circumstances).

Further, the Plaintiffs' intention to premise the fraud claim on the Defendants allegedly inducing individuals to buy a faulty product is sufficient, without consideration of the limited warranties, to support a fraud claim. *See Koehlinger*, 933 N.E.2d at 542. To support a claim for fraud in Indiana, a plaintiff must show: 1) a material misrepresentation of past or existing facts

by the party to be charged; 2) which was false; 3) which was made with knowledge or reckless ignorance of the falseness; 4) was relied upon by the complaining party, and (5) proximately caused the complaining party injury. *Kapoor v. Dybwad*, 49 N.E.3d 108, 121 (Ind. Ct. App. 2015). The Plaintiffs, in their complaint, have alleged each of those elements without reliance on the existence of the limited warranties. *See, e.g.*, (DE 1 ¶ 13–17, 21–24, 28–32, 36–40, 44–50, 84–86.) The Court thus finds the Plaintiffs' fraud claim should not be dismissed.

## IV.    Conclusion

For the foregoing reasons, the Court DENIES the Plaintiffs' motion for leave to file a surreply (DE 27) and DENIES the Defendants' motion to compel arbitration (DE 16). The Court additionally GRANTS the Defendants' motion to dismiss (DE 18) with respect to Counts 1, 4, 5, and 6 and DENIES the Defendants' motion to dismiss with respect to Counts 2, 3, 7, 8, 9, 10 (mislabeled in the Complaint as "Count VIII"), and 11.

SO ORDERED.

ENTERED: March 8, 2022

        /s/ JON E. DEGUILIO
        Chief Judge
        United States District Court